UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:24-CV-00104-EBA

KENNETH KEETON,                                                                                   PLAINTIFF,

V.                **MEMORANDUM OPINION & ORDER**

MARTIN O'MALLEY,
*Commissioner of Social Security*,                                                        DEFENDANT.

*** *** *** ***

## INTRODUCTION

Plaintiff Kenneth Keeton appeals the Social Security Commissioner's denial of his application for disability insurance benefits. [R. 1]. Specifically, Keeton alleges that the Administrative Law Judge (ALJ) committed "reversible error by failing to consider [his] kidney impairment." [R. 14-1 at pg. 4]. Keeton and the Commissioner filed briefs in support of their respective positions. [R. 14-1; R. 17]. So, this matter is ripe for review. For the reasons discussed below, the Court will affirm the Commissioner's decision.

## FACTS AND PROCEDURAL HISTORY

Kenneth Keeton is approximately 52 years old. [R. 11-6 at pg. 2]. The records for this case indicate that he has a limited education[1] and previously worked as tractor trailer truck driver. [*Id.* at pg. 40; R. 14-1 at pg. 1]. Unfortunately, Keeton suffers from several medical conditions,

---

[1] "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3).

including "diabetes, neuropathy, obesity, and proliferative diabetic retinopathy of the bilateral eyes with macular edema status-post surgeries, including cataract removal from the left eye." [R. 14-1 at pg. 2]. On June 30, 2020, Keeton protectively filed a Title II application for disability insurance benefits, alleging that his disability began on May 11, 2020. [*Id.* at pg. 1; R. 11-6 at pg. 2]. Keeton's date last insured (DLI) was June 30, 2020, when he was 47 years old.[2] [*Id.*]. Thus, to prevail, Keeton needed to establish that he was disabled within the meaning of the Social Security Act between May 11, 2020, and June 30, 2020.

Keeton's claim was denied initially and on reconsideration. [*Id.* at pgs. 2–8, 12–25]. He then requested a hearing before an Administrative Law Judge, and a hearing was held before ALJ Boyce Crocker on July 9, 2021. [*Id.* at pg. 31]. After the hearing, ALJ Crocker determined that Keeton was not disabled within the meaning of Title II and denied his application. [*Id.* at pgs. 31–42]. Keeton requested a review of ALJ Crocker's decision with the Appeals Council and, on August 25, 2022, the Appeals Council issued an order remanding Keeton's case back to ALJ Crocker. [*Id.* at pgs. 49–50]. As cause, the Appeals Council stated that "[t]he audio recording of the hearing unintentionally captured sounds that are unrelated to the hearing," apparently the result of equipment "not [being] muted . . . as is needed to obtain a proper recording." [*Id.* at pg. 49]. The Appeals Council's order also directed ALJ Crocker to further consider Keeton's residual functional capacity[3] "during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations." [R. 11-3 at pg. 618].

---

[2] "The date last insured . . . is the last day of the quarter a claimant[] meets insured status for disability or blindness. For title II Disability Insurance Benefit . . . claims, adjudicators cannot establish onset after the DLI." POMS DI 225501.320 *Date Last Insured (DLI and the Established Onset Date (EOD))*, available at https://secure.ssa.gov/poms.nsf/lnx/0425501320. Put another way, Keeton must establish disability on or before June 30, 2020, to be entitled to a period of disability and disability insurance benefits.

[3] Residual functional capacity (RFC) "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

After holding a remand hearing, ALJ Crocker again issued an unfavorable decision on April 27, 2023. [*Id.* at pgs. 618–630]. Keeton then requested a review of ALJ Crocker's remand decision before the Appeals Council, claiming that—without further elaboration—Crocker's "decision contains errors of law and fact." [R. 11-7 at pgs. 148–49]. This time, the Appeals Council denied Keeton's request because he failed to provide an adequate basis on which ALJ Crocker's decision should be changed. [R. 11-2 at pgs. 2–5]. So, because the Appeals Council declined review, ALJ Crocker's decision on remand became the Commissioner's final decision, which is subject to review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Now, having exhausted all administrative remedies, Keeton seeks judicial review of ALJ Crocker's decision denying benefits. [R. 1].

STANDARD OF REVIEW & FRAMEWORK FOR DISABILITY DETERMINATIONS

A.

Administrative Law Judges must "follow agency rules and regulations." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A court reviewing the Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence . . . is 'more than a mere scintilla of evidence'" and "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)). Because the "threshold for such evidentiary sufficiency is not high," *id.*, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)).

It is important to note that where, as here, the Appeals Council denies review of an ALJ's decision, that decision becomes the final decision of the Commissioner. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

It has been observed that, because "[t]he Social Security hearing system is 'probably the largest adjudicative agency in the western world,'" the "need for efficiency" in resolving appeals regarding agency decisions is "self-evident." *Heckler v. Campbell*, 461 U.S. 458, 461 n. 2 (1983) (internal citations omitted). Accordingly, a reviewing court owes the Commissioner's decision great deference. In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *Id.*; *see also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

## B.

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> (i)   At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

  (ii)  At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

  (iii)  At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

  (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, Keeton bears the burden of establishing the severity of his impairments and that he had greater limitations than the ALJ imposed. *Her v. Commissioner of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (noting that "the burden of proof lies with the claimant at steps one through four of the [sequential evaluation] process"); *Higgs v. Bowen,* 880 F.2d. 860, 863 (6th Cir. 1988) (noting that the claimant has the burden to "prove the severity of her impairments"). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's RFC, age, education, and past work experience. *Her*, 203 F.3d at 391.

### THE ALJ'S FINDINGS

As noted above, ALJ Crocker issued an unfavorable decision on Keeton's claim for benefits during Keeton's initial appeal, [R. 11-6 at pgs. 31–42], and upon remand. [R. 11-3 at pgs.

618–30]. On remand, ALJ Crocker found at Step One that Keeton last met insured status on June 30, 2020, and had not engaged in substantial gainful activity during the period from his alleged onset date of May 11, 2020, through his DLI. [R. 11-3 at pg. 621]. At Step Two, Crocker found that Keeton suffers from the following severe impairments: diabetes neuropathy, proliferative diabetic retinopathy of the bilateral eyes with macular, and obesity. [*Id.*]. Crocker also found that Keeton suffered from two non-severe impairments: hyperlipidemia and hypertension. [*Id.*]. At Step Three, Crocker determined that Keeton's impairments, through the DLI, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id.* at pg. 623]. In determining Keeton's RFC, ALJ Crocker stated the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except stand/walk for 4-hours of an 8-hour workday[,] occasionally climb ramps and stairs, but no ladders, ropes or scaffolds; could occasionally stoop, kneel, crouch and crawl; must avoid all exposure to unprotected heights and moving machinery; had visual limitations such that near and far acuity would be present bilaterally.
> [*Id.*].

Based on Keeton's RFC and accompanying findings of fact, ALJ Crocker concluded at Step Four that Keeton was unable to perform any past relevant work through the DLI. [*Id.* at pg. 628]. However, at Step Five, Crocker found that Keeton is "not disabled"—and thus ineligible for benefits under Title II—because Keeton "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy" through the DLI. [*Id.* at pgs. 628–29]. In making that determination, he relied on a vocational expert who testified that Keeton would have been able to perform the requirements of the following occupations: (1) housekeeping cleaner, (2) merchandise marker, (3) call out operator, and (4) document preparer. [*Id.*].

## ANALYSIS

Keeton maintains that ALJ Crocker's unfavorable determination regarding his application for Title II benefits is not supported by substantial evidence because Crocker failed to consider Keeton's chronic kidney disease. [R. 14-1 at pgs. 3–4]. Specifically, Keeton argues that his "medical record is replete with references to a steadily worsening kidney impairment," citing his long battle with diabetes and the specific finding that his 2021 stage 3b chronic kidney disease diagnosis was attributed to his diabetes. [*Id.* at pg. 4]. Given this diagnosis and supporting evidence, Keeton contends that he meets listings 6.03 and 6.05 based on, respectively, his chronic dialysis and chronic kidney disease. [*Id.*]. Thus, Keeton avers that ALJ Crocker's failure to consider his kidney impairment is reversible error. [*Id.*].

The medical record is indeed replete with evidence that Keeton suffers from a chronic kidney condition. [*See, e.g.*, R. 11-5 at pgs. 665–87; R. 11-14 at pgs. 1737–47, 1754]. But as the Commissioner correctly points out, none of this evidence is from before the date on which Keeton was last insured. [R. 17 at pg. 6]. Keeton does not dispute that the proffered evidence of his kidney impairments—and thus his ability to meet listings 6.03 and 6.05—is from after the DLI. [R. 14-1 at pg. 4]. Rather, Keeton contends that such evidence should "relate back" because his recent kidney diagnoses "did not appear overnight" and are the result of a "culmination of years of impaired kidney functioning relating back to his diabetes." [*Id.*]. In response, the Commissioner contends that the post-DLI evidence of kidney impairment does not relate back because Keeton did not "allege kidney problems as a disabling impairment" when he first applied for benefits. [R. 17 at pg. 6]. Furthermore, the Commissioner notes that Keeton "expressly stated he stopped working because his vision problems caused him to lose his commercial driver's license." [*Id.* at pgs. 4–6].

While an ALJ must consider all evidence of record when making a Title II disability benefits determination, *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014), "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed.App'x. 841, 845 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Hum. Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988)). Indeed, such evidence should only be considered "insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.*, 440 F.Supp.2d 696, 699–700 (E.D. Mich. 2006) (citing *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976)). Put another way, an ALJ's failure to consider post-DLI evidence of impairment(s) is not error unless the post-DLI evidence of impairment "relates back" to the claimant's impairment(s) during the relevant period of review.

Here, Keeton's post-DLI kidney diagnoses do not relate back to his condition during the relevant period. In his initial application for benefits, Keeton did not allege any kidney impairment. [*See* R. 11-6 at pgs. 2–9]. Further, of the impairments which ALJ Crocker did find that Keeton suffered from during the relevant period, [R. 11-3 at pg. 621], none of these impairments—severe or non-severe—had any relation to his kidneys. Keeton seems to imply that his kidney impairments do relate back because both his pre-and post-DLI impairments and diagnoses all possessed a similar root cause (i.e., diabetes). [*See* R. 11-6 at pgs. 2–9 (listing diabetes and diabetic neuropathy as disabling impairments); *see also* R. 14-1 at pg. 4 (citing R. 11-14 at pg. 1740) (November 2021 medical report of Dr. Charbel Salem, Keeton's treating physician, attributing Keeton's chronic kidney disease to his diabetes); R. 11-14 at pg. 1754]. Importantly, however, Keeton bears the burden of showing how his post-DLI diagnoses caused him functional limitations during the relevant period. *See Higgs*, 880 F.2d at 863 (noting that a "mere diagnosis . . . says nothing about

the severity of the condition"); *see also Her*, 203 F.3d at 391 (noting that "the burden of proof lies with the claimant at steps one through four of the [sequential evaluation] process"). By relying solely on a post-DLI diagnosis without offering any affirmative medical evidence that specifically links his chronic kidney disease diagnosis to his condition during the relevant period, Keeton has failed to meet this burden. Moreover, to the extent Keeton urges this Court to find error in Crocker's failure to make this evidentiary connection on his own, this Court may not, and will not, reweigh the evidence. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854–55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence."); *see also Ulman*, 693 F.3d at 714 (stating that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess").

      Even if the proffered evidence does relate back to his pre-DLI impairments, Keeton cannot demonstrate that any error occurred because Crocker's determination is supported by substantial evidence. Indeed, where an ALJ's decision is supported by substantial evidence, courts in this Circuit have declined to reach the issue of whether an ALJ erred in failing to consider evidence offered from a treating source after the DLI. *See, e.g.*, *Shavers v. Sec'y of Health & Hum. Servs.*, 839 F.2d 232, 234 (6th Cir. 1987). In concluding that Keeton was not disabled, ALJ Crocker explicitly stated that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." [R. 11-3 at pg. 624]. Moreover, Crocker considered a plethora of medical records dating as far back as January 10, 2020—prior to May 11, 2020, the beginning of the relevant period—through June 20, 2021. [*See* R. 11-3 at pgs. 621–28 (citing R. 11-10 at pgs. 2–382; R. 11-13 at pgs. 10-30, 36-44, 177-309)]. And among the

symptoms and evidence considered, Crocker's opinion also highlighted Keeton's own testimony where he stated that, during the relevant time period, he suffered from "daily swollen legs . . . caused by diabetes issues and kidney problems." [*Id.*]. Accordingly, the record reflects that ALJ Crocker's decision is supported by substantial evidence.

## CONCLUSION

Kenneth Keeton appealed the Commissioner's final decision finding that he can perform light work, arguing that ALJ Crocker's findings were not supported by substantial evidence because Crocker failed to consider his chronic kidney disease. However, because Keeton's kidney impairments did not relate back to his pre-DLI impairments, Crocker was not required to consider any evidence of Keeton's kidney impairments. Moreover, even if Keeton's kidney impairments did relate back, no error occurred because Crocker's decision was supported by substantial evidence. Therefore,

**IT IS ORDERED** that Plaintiff Kenneth Keeton's motion for summary judgment, [R. 14], is **DENIED**. A separate judgment affirming the Commissioner's decision will follow.

Signed January 29, 2025.

Signed By:
*Edward B. Atkins* *EBA*
**United States Magistrate Judge**